By the statement made up for this Court the case appeared to be this: By an act of the General Assembly passed on 1818 certain *Page 284 
commissioners were appointed "for opening books to receive subscriptions to the amount of $75,000 for improving the navigation of Tar River."
The act directed that the commissioners, or a majority of them, (521) should prepare books for receiving the said subscriptions, and should open the same on or before 1 April, 1819, at such places and under the direction of such persons as they should designate for that purpose; the books to remain open until the first Monday in June, at which time they were to be returned to the commissioners in the town of Louisburg. The act then proceeded in these words:
"And on the first Monday of June next there shall be a meeting of the subscribers in the town of Louisburg, and such meeting may be continuedfrom day to day until the business be finished. If it appear tothe said commissioners, upon the return of the said books, that the sum of $30,000 has been subscribed, the said subscribers, their heirs and assigns, from the time of their said first meeting, shall be, and they are hereby declared to be, incorporated into a company by and under the name of `Tar River Navigation Company,' and as such may sue and be sued, plead and be impleaded, defend and be defended, have perpetual succession and a common seal; and such of the said subscribers as shall be present at the said meeting, or a majority of them, are hereby empowered and required to elect a president and five directors for conducting the said undertaking and managing all the said company's business and concerns."
The second section of this act revives and declares in force the provisions of an act passed in 1816, entitled "An act concerning the navigation of Tar River." By section 4 of the act of 1816 it is enacted that certain sections of an act passed in 1812 for improving the navigation of Roanoke River, and among others section 4 of the said act, shall constitute part of the charter of the Tar River Navigation Company.
The section referred to in the act of 1812 provides that each subscriber shall pay, at the first general meeting of the stockholders, $10 upon every share by him subscribed, and on failure his name may be struck off the books and his shares taken by others complying with this provision. The section then authorizes the president and directors, from time to time, to make and sign orders for money, and to direct at what times and in what proportions the subscribers shall pay (522) the sums by them subscribed: Provided, that not more than $33.33 1/3 per share shall be required to be paid in any one year. The section then enacts that "If any of the subscribers, their heirs or assigns, shall fail to pay their proportions required within one month after the same is advertised, the president and directors may sell at auction and convey to the purchasers the shares of the subscriber so failing, giving one month's notice of the sale." If such sale produce more than *Page 285 
the sum due, with interest and charges of sale, the surplus is directed to be paid to the former owner of the shares sold; and if the sale should not produce the full sum due, with interest and charges, it is enacted that "the president and directors may, in the name of the company, sue for and recover the balance by motion in any court of competent jurisdiction, on ten days' previous notice."
In May, 1618 (before the passage of the act of 1818 above mentioned), a number of persons, and among them the present defendant, signed a paper-writing in these words:
"We, whose names are hereunto subscribed, promise and oblige ourselves, our heirs, etc., to pay to John D. Hawkins the sum of $100 for each share subscribed against our names severally, to the use of such persons as may be hereafter appointed president, directors, and company of the Tar River navigation, subject to such rules and payable by such installments as the charter for rendering navigable the said river may provide."
On this paper were subscribed shares to the amount of $32,000, and there was thereon an assignment by John D. Hawkins in the following words:
I hereby indorse and assign this subscription list over to the commissioners appointed by the Assembly of 1818 for the purpose of receiving shares of stock for making Tar River navigable.
1 March, 1819. JOHN D. HAWKINS.
On 1 April, 1819, the commissioners opened books for subscriptions pursuant to the act, and in one of the books so opened John D. Hawkins subscribed the names of those who had signed the paper made payable to him and the amount of shares subscribed by (523) each, and annexed thereto the following memorandum, viz.: "The foregoing were transferred from an old list made payable to John D. Hawkins for the use of the Tar River Navigation Company." And there appeared also subscribed in this book, in the handwriting of the parties themselves, shares to the amount $24,300, and among these subscribers was one of those who had signed the paper made payable to John D. Hawkins. To this subscription book was annexed the following certificate, viz.:
We, the undersigned commissioners under the act of 1818, concerning the Tar River Navigation Company, in pursuance of the authority vested in us, opened the foregoing subscription and met in the town of Louisburg the first Monday of June, 1819, and from day to day adjourned until the 16th June, when the said commissioners met. On making an estimate of the subscription made as aforesaid, and on other subscriptions the sum of $56,300 appeared to have been subscribed on the *Page 286 said first Monday in June, instant. Whereupon, according to the provisions of said act, the said company is declared to be incorporated accordingly. W. MOORE, JOHN D. HAWKINS, JOHN J. INGE, N. PATTERSON, Commissioners.
On the trial of the cause in the Superior Court the defendant objected that there was no such corporation as the Tar River Navigation Company, and moved for a nonsuit.
The plaintiffs then offered to prove that at the meeting of subscribers which took place on the first Monday of June, 1819, which was adjourned from day to day until the 16th day of that month, the defendant, together with many others who had signed the paper-writing above mentioned, payable to John D. Hawkins, were personally present on the 16th, when the report of the commissioners above stated was read, and the question being put to the subscribers present whether they assented to the report, the defendant and all the other subscribers voted in the affirmative, and further, that the shares of the subscribers (524) then present amounted to more than $30,000, and that they at that time proceeded, pursuant to the act, to elect a president and directors, and that the defendant voted in said election. The presiding judge refused to admit this evidence. The plaintiffs then offered to prove that at the adjourned meeting on 16 June the shares of the subscribers who had signed the commissioners' books with their own hands, together with those who had signed the Hawkins' paper, and who were represented by proxies then present, duly authorized, amounted to more than $30,000. This evidence also the judge rejected, and ordered a nonsuit to be entered; and thereupon the plaintiffs appealed to this Court.
The authorities concur in establishing the position that when a corporation sues for a debt its existence must be proved on the general issue; and the question arising here is whether the evidence offered was sufficient for that purpose. The act of incorporation, (535) and the declaration of the commissioners that the necessary sum had been subscribed, and the subsequent proceedings of electing a president and directors, gave existence to the corporation; and although the commissioners should have been mistaken in their report as to the amount of the sum subscribed, yet having been entrusted by *Page 287 
the Legislature with the power of deciding on that fact, their acts can only be examined in a proceeding directly against the corporation to inquire into the validity of the charter. It might be sufficient for the purposes of the case to set aside the nonsuit on account of the rejection of this evidence; but as other topics have been discussed, upon which it may be desirable to the parties to have the opinion of the Court, as the means of preventing expense and litigation, I shall now proceed to notice them.
It is said that no action or warrant can be brought for the payments declared by the company, because the law of 1812 has provided for striking off the names of the delinquent subscribers and the sale of their shares. But the terms of this act leave it discretionary with the company whether they will do it or not. It is merely a cumulative remedy given by the act to facilitate the operations of the company; for it might happen that the shares should become wholly unsalable and unproductive when the exigencies of the company demanded an immediate supply of funds, which yet might be raised by suing the stockholders on the original contract. A similar provision has been inserted in the charters of other incorporated companies; and the general course of judicial exposition is that it gave the company an election either to sue or exact the forfeiture prescribed by the statute.
The only other question I shall notice is whether it is competent for the defendant to deny the existence of the corporation; and considering the contract made by him, promising to pay for the shares to the use of the persons who might thereafter be appointed president, (536) directors, and company, his presence at the meeting when the commissioners made their report, his assent thereto, and afterwards voting for the president and directors: these are acts which, taken in connection with each other, do, in my opinion, estop him from disputing the regularity of inceptive steps tending to formation of the company. By entering into a contract with the plaintiffs in their corporate name, he thereby admits them to be duly constituted a body politic and corporate under such name; a rule which appears to be recognized in 2 Ld. Ray., 1532, and one certainly consistent with justice and the analogies of the law. I think there ought to be a new trial.