Pkaeson, C. J.
 

 We concur with his Honor, in the opinion, that neither of the objections, taken on the part of the defendant, are tenable.
 

 1. The several acts of the Legislature, set out as a part of the case, connected with the fact, “ that the place” has been inhabited as a town, and has been laid off into lots and streets, with known lines, among others, the line which was crossed by the hog of the defendant, for upwards of sixty years, show that it is incorporated with “ defined limits and boundaries.”
 

 The act of 1784, empowers certain persons as trustees and directors to purchase one hundred acres, and 1o lay off forty acres in half-acre lots, with convenient streets, lanes and allies, “ which lots, so laid off according to (he directions of this act, are hereby constituted and erected a town, and shall be called by the name of ‘Trenton.’” The question is, was the forty acres so laid off'? That is conclusively established by the facts above set forth, and the additional fact, that in 1803, 1810, 1813 and 1825, the existence of the “ town of Trenton” is assumed and recognised by acts of the Legislature, passed for its better regulation.
 

 3. When a number of persons are made a corporation, with power in its members to fill vacancies for the purpose of continuing its succession, and this duty is neglected, so that the corporators cease to exist, as if they all be dead or removed, the corporation can no longer have an existence, and an act of the Legislature is then necessary to call it into life again, as was done bjr the act of 1813, which appoints another set of commissioners with power in its members to fill vacancies.
 

 In order to prevent a recurrence of a like necessity in future, the acts of 1825 amends the prior acts, and among other things, provides that instead of vacancies in the body of
 
 *113
 
 the commissioners being filled by its members, the commissioners shall be annually elected by the free male inhabitants of the town, which provision has the legal effect of preventing the corporation from ceasing to have an existence as long as there are free male inhabitants of the town enough to hold an election; on the same principle, that a corporation, when vacancies are to be filled by its members, has an existence so long as there are members enough to fill vacancies; for it only becomes clefnnct when there are no members of the corporation, and no mode of supplying their places.
 

 3. Letitbeadmittedthattheelection of the plaintiffs, as commissioners, was irregular, and that they may be removed from office by a writ of
 
 quo
 
 wcvrranto, still they went into office after an election, which cannot be treated as a mere nullity, but is color of title, so as to constitute them officers
 
 defacto,
 
 and the law will not allow their authority to be impeached in a collateral way; because, to do so, would tend to produce disorder and collision among the citizens of the country, and encourage every one to attempt the redress of his supposed wrongs, by force, and with a high hand, as was done by the defendant, in this instance. The doctrine, that an
 
 officer de facto
 
 is one who enters under color of an election or appointment, although irregular, and is not a mere
 
 usurper,
 
 is so clearly and fully explained in
 
 Burton
 
 v.
 
 Patton,
 
 2 Jones’ Rep. 124, and
 
 Burke
 
 v.
 
 Elliott,
 
 4 Ire. Rep. 355, as to render any remark unnecessary; I will only add a reference to
 
 Scadding
 
 v.
 
 Lorant,
 
 5 Eng. Law and Eq. 16. In answer to a question proposed to them, the Judges were unanimously of opinion, “ that the vestry men
 
 de facto
 
 were as competent to join in making a rate as the vestry men
 
 de
 
 jure,” and the Lord Chancellor remarked,
 
 “
 
 The opinion of the Judges as to ves.try men
 
 de facto
 
 and
 
 dejure
 
 was of great importance. When it was considered that there were many persons charged with very important duties, and whose title to perform those duties, or to exercise the powers necessary for their performance, the public could not easily ascertain at the time, and when it was remembered what inconveniences would arise, if the
 
 *114
 
 validity of their acts depended upon the propriety of the election of the persons who had to perform them, the value of the clear enunciation oí the principle, thus made by the Judges, was very great, and in the correctness of it, he begged to declare his entire concurrence.”
 

 Per Curiam,
 

 Judgment affirmed.