It appears that plaintiff company sold to the Tarboro Cotton Factory, to be used in operating the mill, a bill of coal to the amount of $400. The cotton mill having become insolvent, and plaintiff's debt remaining unpaid, he instituted this action, seeking to hold individual defendants personally liable for the debt. (247)
The principal facts relevant to the questions presented, and his Honor's judgment thereon, are as follows:
1. That the Tarboro Cotton Factory was a duly incorporated and organized corporation under the laws of North Carolina prior to December, 1913.
2. That on said date L. E. Norfleet and others, minority stockholders of the said corporation, instituted an action against said corporation in the Superior Court of said county, alleging insolvency and praying the appointment of a receiver and the dissolution of said corporation, and the several judgments and reports of *Page 266 
sale therein material to the matter in controversy in this action are made a part of this agreed fact.
3. That under and by virtue of the judgment in said cause, the franchise and property and capital stock of the corporation was sold as directed by said judgment by the commissioners, and bought by Henry Staton under the conditions set forth in the deed to L. L. Staton, E. V. Zoeller, and Job Cobb, recorded in Book 172, page 375, as will appear from said judgments and deeds; and the said Staton thereafter conveyed the same to said L. L. Staton, E. V. Zoeller, and Job Cobb, as will appear from the following deeds: C. A. Johnson and H. B. Foxall, commissioners, to Henry Staton, recorded in Book 172, page 363, of the Edgecombe registry; Henry Staton to L. L. Staton, E. V. Zoeller, and Job Cobb, recorded in Book 172, page 375, of the said Edgecombe registry; and the said deeds are hereby made a part of this agreed fact; that no conveyance was made by said Staton, Zoeller, and Cobb to said Tarboro Cotton Factory or any other person.
4. That thereafter the said L. L. Staton, E. V. Zoeller, and Job Cobb met and the proceedings entered on the minute book of the Tarboro Cotton Factory as of date of 1914 were had, and the said minutes are made a part of this finding of fact.
5. That thereafter the said L. L. Staton, E. V. Zoeller, and Job Cobb operated said property as the Tarboro Cotton Factory, and contracted the bill of plaintiff in the name of Tarboro Cotton Factory, and plaintiff accepted notes of the Tarboro Cotton Factory in the payment of the same.
Upon the foregoing facts the court is of opinion that the said Tarboro Cotton Factory was sold as a going concern, subject to $100,000 deed of trust, and that the said L. L. Staton, E. V. Zoeller, and Job Cobb are not personally liable for the claims of plaintiff.
It is therefore ordered that the said L. L. Staton, E. V. Zoeller, and Job Cobb go without day and recover their costs.
It is further ordered that the plaintiff recover of the (248) Tarboro Cotton Factory the sum of $400, with interest from 18 June, 1915, subject to any amount that may have been collected of the defendant, Tarboro Cotton Factory, on account of execution heretofore issued on the judgment of the recorder, and costs.
 H. W. WHEDBEE, Judge Presiding.
From this judgment the individual defendants, having duly excepted, appealed.
From a perusal of the records and deeds, together with the entries on the minute book, referred to in the second, third, and fourth paragraphs of his Honor's judgment, it appears that, proceeding under chapter 147, Public Laws 1913, a minority of the stockholders of the Tarboro Cotton Mills, for lack of dividends paid or earned for six and three years, respectively, have obtained a decree directing a sale by court commissioners of all the property and franchises of the Tarboro Cotton Mill, subject to an existent mortgage of $100,000, for the purpose of winding up its affairs and distributing its assets.
The decree, reciting that it would be to the interest of all the stockholders, minority and other, that the stock as well as the property and corporate franchise be sold as a "going concern," directed that all stockholders be required to file their stock, endorsed in blank, with the clerk within sixty days, to be delivered to the purchaser under the sale, and on confirmation of the same, and that every stockholder who failed to deliver should be foreclosed of all right, title and interest in the stock, and new stock should be issued instead thereof to the purchaser, etc.; that pursuant to such decree, the property, "real and personal, of said corporation, together with its franchises, rights and appurtenances," was sold on 26 June, 1914, by the commissioners, and bid in by Henry Staton at $29,000; and the sale, being duly confirmed and price paid, was on 30 June, 1914, conveyed to him, free and clear of any and all claims whatsoever, except said prior mortgage of $100,000, and he in return reciting that he had acted in the matter for L. L. Staton, E. V. Zoeller, and Job Cobb, the three individual defendants, conveyed to them, their heirs, executors, administrators and assigns, "all the property described in his said conveyance, and all rights, title and interests therein acquired by him as purchaser at said sale, either by deed or under and by virtue of said decree," etc.; that within thirty days from said decree and sale and conveyance, to-wit, on 6 July, 1914, the purchasers met and proceedings were had, as follows, the same being entered on the minute book of the corporation as "minutes (249) of the meeting of the board of directors of the Tarboro Cotton Factory, held at the office of the company on 6 July, 1914":
"Present: L. L. Staton, E. V. Zoeller, and Job Cobb, who remained throughout the meeting. L. L. Staton was elected chairman and E. V. Zoeller secretary pro tem.
"The secretary read the court decrees and conveyances, and reported the 115.8 shares of stock delivered to Henry Staton, attorney, by the clerk of the court, had been delivered to him. Copies of the decrees and conveyances were ordered filed with the minutes.
"The vacancy caused by the resignation of T. E. Marshall as *Page 268 
secretary was filled by the election of E. V. Zoeller as secretary of the company, salary to be determined later.
"Upon resolutions unanimously carried, it was ordered that the president, L. L. Staton, and the secretary, E. V. Zoeller, issue to E. V. Zoeller 527.6 shares of stock, and to Dr. L. L. Staton 527.7 shares of stock, and to Job Cobb 527.6 shares of stock; the said parties having agreed that their interests as purchasers of the property were in proportion of one-third each, that being the liability of each as between themselves on the endorsements of notes of the factory outstanding.
"Upon resolutions unanimously carried, it was agreed that Henry Staton be paid in stock 61.6 shares for services rendered and expenses incurred in assistance to the purchasers and the company, and a certificate for 61.6 shares was ordered issued to him. This is not to affect in any wise any claim he might have against the company for loans, and it being understood also as between the endorsers of the Mutual Alliance Trust Company's note he should be protected against liability.
"The purchase of the company by others having divested H. L. Staton and H. C. Bridgers of stock ownership in the company, their directorship therein was declared terminated, and Henry Staton elected to fill one of the vacancies so made.
"The certificates of stock directed in the foregoing to be issued were issued and delivered to the respective parties.
"The president reported that the cloth of No. 2 mill was being started up.
"Above minutes read and approved before adjournment.
"E. V. ZOELLER, Secretary."
And thereafter, as stated in the fifth paragraph of the judgment, the owners and holders of said stock continued to operate "said property as the Tarboro Cotton Factory, and contracted the bill of plaintiff in the name of the Tarboro Cotton Factory, and plaintiff accepted notes of the Tarboro Cotton Factory in payment of the same."
Upon these facts and findings, we concur in the opinion (250) of his Honor that no individual liability should attach by reason of plaintiff's claim.
Chapter 147, Laws 1913, under which this decree and sale were had, provides that, except in case of corporations for religious, charitable, fraternal, or educational purposes, and except public-service and banking corporations, whenever stockholders owning as much as one-fifth or more of capital stock of a corporation shall apply to the court by petition and allege and show that for six years preceding no dividend has been paid, or for three years no dividend as *Page 269 
much as 4 per cent has been earned, the court shall enter a decree for dissolution of the corporation, a winding up of its affairs and distribution of its assets, provision being also made looking to proper notice to shareholders and persons having claims against the company or its property. Standing alone, this statute might be considered as confining the court, in such a proceeding, to a decree strictly of dissolution, involving a destruction of the corporate franchise, but when construed as it should be (Keith v. Lockhart, 171 N.C. 457), in connection with other provisions of our statute law on the subject, notably Revisal, chap. 21, secs. 1238, 1239, 1240, 1241, the court had ample power, in our opinion, to enter a decree for a sale of the franchise with the corporate property, transferring the same to the purchasers and conferring upon them the right to reorganize and carry on the business as a new corporation. Coal and IceCo. v. R. R., 144 N.C. 732. These sections referred to comprise a distinct subdivision of the chapter on corporations, entitled "Reorganization" (section 1238), providing that whenever the property and franchise of a corporation shall be sold under a judgment or decree of court, etc., or under execution, to satisfy a mortgage debt or other incumbrance thereon, such sale shall vest in the purchaser all the right, title, interest and property of the parties to the action in which such judgment or decree was made to said property or franchise so sold, subject to all the conditions, limitations and restrictions of such corporation and such purchaser and his associates, not less than three in number, shall thereupon become a new corporation, by such name as such persons shall select, who shall be the stockholders in the ratio of the purchase money by them contributed, and shall be entitled to all the rights and franchises, and be subject to all the conditions, limitations and penalties of such corporation when property and franchises shall have been sold," etc.
Section 1239 provides that the purchasers shall meet within thirty days for the purpose of reorganizing.
Section 1240. That the persons shall adopt a corporate name and seal, determine the amount of capital stock, and have power and authority to issue certificates on such shares and amounts as they see fit.
Section 1241. Among other things, that within one month after organization, it is the duty of the new corporation to (251) file a certificate with the Secretary of State, giving the date of organization, the name, amount of capital stock, with name of president and directors, which shall be recorded, and this shall be the charter and evidence of the corporate existence of the new corporation, etc.
This section contains also a proviso that nothing in the chapter *Page 270 
shall divest or impair the lien of any prior mortgage or encumbrance, thus justifying that portion of the present decree that sold, subject to the first mortgage of $100,000. It was the evident design and purpose, as it is the express meaning of these sections, not only to provide a successor to an insolvent corporation that might renew and carry on its business when desired, but that the franchise shall constitute an asset enhancing the value of the property to be distributed, and it is clear that the word "encumbrance" in the statute was not used in the restricted sense of an encumbrance on realty alone — that is, an estate or interest in property, or a burden thereon, tending to diminish its value, usually in the form of a lien, but embracing the property of the corporation, both real and personal, including its franchise. The term, as used in the statute, should be properly extended to any and every claim which imports a liability to sale as a whole by judicial decree. And this proceeding, which contemplated and authorized a disposition of the entire property, including the franchise, and a distribution of the proceeds among creditors and claimants, who were notified to appear, and among the stockholders, should there be a surplus, comes within the words and meaning of the statute, and justifies and upholds the sale and conveyance of the franchise conferring on the purchasers the right of corporate existence.
The portion of the decree which undertakes to eliminate the interest of the old stockholders by surrender and cancellation of their shares had no direct effect on the right of the parties. These old holders had a right, of course, to share in the assets if there was a surplus, and that is allowed them by the decree, but so far as the new corporation is concerned, the judicial sale under the statute effectually destroyed or annulled their holdings, and the case stands, as stated, as upon a sale of the corporation franchise and property as a whole, designated in the recital only as a "going concern."
Holding then the property and franchise with the right to organize thereunder, the question recurs on the conduct of the parties and its proper significance after their purchase. By reference to the minutes, it will appear that, within the thirty days as required by the statute, they met and apportioned the stock among three defendants, except 61 shares allotted to Henry Staton for his services.
They elected a president and secretary. By clear inference, (252) they affirmed the old directorate, except H. L. Staton and H. C. Bridgers, whose office was declared terminated, and H. L. Staton elected to fill one of the vacancies; and thereafter they continued to operate the factory as before, and in such operation contracted present debt in the corporate name. True, they did not adopt a new seal and name — that is, a different name — nor determine *Page 271 
anew on the amount — that is, on a different amount of capital stock; nor have they as yet filed their certificate with the Secretary of State, as contemplated and directed by section 1241. As to the name, the language of the statute is, "shall become a new corporation, by such name as they (the purchasers) shall select; nor is there express requirement in sections 1239 and 1240 that there shall be a different name and seal. This is usually desirable, but there seems to be nothing to prevent the purchasers from adopting the old seal and name if they see proper, nor from determining on the old number of shares; and as to filing the certificate, this is not made in such cases a condition precedent to corporate existence. Where parties have no charter and are proceeding to form one, section 1140 provides that corporate existence shall commence at the time of "filing the certificate with the Secretary of State"; but here the purchasers already had a charter by reason of their purchase; and the statute applicable (section 1240) provides that they shall, within one month from its organization, file the certificate containing certain statements with the Secretary of State, a copy of which, duly certified, shall be recorded in the office of the Superior Court clerk of the principal place of business, which shall be its charter and evidence of itscorporate existence.
These omissions, if they were such, were no doubt due to the fact that in its recital the decree stated that it was to the interest of all parties that the corporation be sold as a going concern, and the purchasers may have thought — erroneously thought — that they were restricted to the provisions of the old charter in the respects suggested, but they were evidently acting in good faith about it, and on a proper consideration of these proceedings, we are by no means confident that these parties did not become a corporation de jure — that is, with a charter or law authorizing it. They have complied substantially with the charter requirements looking to a completed organization; and very certain we are that, as to this claimant, they became at least a corporation de facto
— that is, having a charter and law which authorized it. They have made, in good faith, an attempt at organization with a colorable compliance with the charter requirements, followed by user of the corporate powers, or some of them.
So far as the State is concerned, the final distinction between the two is that one can successfully resist a suit by the State or sovereign which created it, brought directly to test the rightfulness of its existence, and the other cannot; but as to individuals (253) who have dealt with it as a corporation, as in this instance, there is no essential difference, and actors or owners of both are alike protected from individual liability for debts except to the extent *Page 272 
that the charter or act of incorporation provides. College v. Riddle,165 N.C. 211; Commissioners v. McDaniel, 52 N.C. 107; Burke v. Elliott,26 N.C. 355-359; Tar River Nav. Co. v. Neal, 10 N.C. 520; Union WaterCo. v. Keen, 52 N.J. Eq. 111; Board of Ed. v. Berry, 62 W. Va. 433;Finnigan v. Noerenburg, 52 Minn. 239; Mining Co. v. Woodbury, 14 Cal. 424;Judah v. The Amer. Live Stock Assn., 4 Ind. 333; 2 Cook on Corporations (7th Ed.), sec. 637; Clark on Corporations, chap. 3, p. 86; 10 Cyc. 252; 8 Amer. and Eng. Enc. (2d Ed.), pp. 248-249.
In College v. Riddle, supra, the Court approved the definition of a corporation de facto given in 10 Cyc., to-wit: "That there must be a statute under which it might organize, a bona fide attempt to organize pursuant to the statute, and an actual user of corporate powers incident to such organization." Upholding a conveyance of property by such a corporation, the opinion said, further: "And as such, and in reference to third persons, it could take and hold property and exercise all the powers of a corporation de jure," citing Ferguson v. Noerenburg, 52 Minn. 239;Investment Co. v. Davis, 7 Ind. Ter. 152; Marshall v. Keech, 227 Ill. 35; 1 Clark and Marshall on Corporations, sec. 81. And, further, its powers to act could only be drawn in question by the State on suit regularly entered."
In Board of Education v. Berry it was held, among other things: "If there has been a bona fide effort to comply with the law to effectuate an incorporation, and the persons affected thereby have acquiesced therein, and have exercised the functions pertaining to the corporation, it becomes a de facto corporation, whose corporate existence cannot be litigated in actions between private individuals nor between private individuals and the assumed corporation. And, again, if a corporation de facto exists, it may exercise the powers assumed, and the question of its having a right to exercise them will be deemed one that can be raised only by the State."
If it be conceded, therefore, that in this instance there has not been substantial compliance with the law as to organization, constituting a corporation de jure, we are of opinion, on this record, that these purchasers, holding a charter which gave them the authority, have met all the requirements as to a corporation de facto, and have been properly protected from individual liability.
We have purposely refrained from resting our opinion on the position of incorporation by estoppel, which was also suggested for defendants. That doctrine is recognized in proper instances, (254) but it usually arises in cases where one having received value from an assumed corporation and under obligations for it, is seeking to resist recovery on the ground solely that the alleged corporation had no existence. It is an equitable doctrine, resting in *Page 273 
part on the ground of value having passed, and under circumstances which render it unjust that the suggested defense be upheld. It is very rarely, if ever, allowed where the claimant, having extended credit or value towards the alleged corporation, is seeking to recover his debt. In such case no estoppel arises from the mere fact that a creditor or claimant has dealt with defendant as a corporation; and unless there is one, either dejure or de facto, the members can, ordinarily, be held liable as partners. See Bain v. Clinton Loan Assn., 112 N.C. 248; Hanstein v. Johnson,112 N.C. 253; Clark on Corporations, pp. 99 and 103.
We find no error in the record, and the judgment of the court is Affirmed.
HOKE, J. For the reasons stated in the above opinion of Fuel Co. v.Staton et al., and on exactly similar facts, a judgment denying individual liability is affirmed.
Judgment affirmed.
Cited: Bank v. Cotton Factory, 179 N.C. 204; Britt v. Howell,210 N.C. 476; Starbuck v. Havelock, 252 N.C. 180.