W. W. ROGERS, P. H. MITCHELL, F. D. FLYTHE, E. M. WOOTEN, AND
JOHN EARLY v. C. G. POWELL, J. A. WILLIAMS,
M. D. GATLING, AND J. R. GARRETT.

(Filed 24 October, 1917.)　.

**School Districts—Board of Trustees—Injunction—Quo Warranto—Statute.**

> Individuals claiming to comprise the board of trustees of a school district *de jure* may not enjoin those in possession under a colorable claim of right as such board, from their performance of their duties, as such, and require the defendants to turn over to them the school buildings, etc., and not interfere with them in the control and management of the property, and thus determine collaterally the question of title, for the interests of the public are involved; nor would remedy by injunction be permitted in *quo warranto* proceedings, where the title to office is directly involved. Revisal, sec. 836; *Salisbury v. Croom*, 167 N. C., 223, cited and distinguished.

CLARK, C. J., dissenting.

CIVIL ACTION, from HERTFORD, heard on return to preliminary restraining order, before his Honor, *H. W. Whedbee, Judge,* presiding in the courts of the Third Judicial District, Fall Term, 1917.

The action was instituted by plaintiffs, claiming to be the regular Board of Trustees of Ahoskie School District No. 11, seeking an injunction to require defendants, also claiming to be the regular board, to turn over to plaintiffs the school building, etc., and to enjoin defendants from interfering with plaintiffs in the control of said property and in the management of said school and its affairs.

From judgment dissolving the restraining order, the plaintiffs appealed.

*Winborne & Winborne and Pruden & Pruden for plaintiff.*
*Winston & Matthews and W. R. Johnson for defendant.*

HOKE, J. Chapter 210, Private Laws 1909, provides for creation of Ahoskie School District No. 11, incorporating a board of trustees of six members for the governance of the school and its affairs, who shall hold office for six years, and to be divided into classes, so that two shall go out by expiration of term every .two years. In case of *ad interim* vacancies, they shall be filled by the remaining members of the board by a majority vote thereof until the next general election, when such vacancies shall be filled by an election of the voters of the district.

A perusal of this record will disclose that this is a contest between two rival boards of trustees, each claiming to be *de jure,* and where the defendants are and ·have been in the actual enjoyment of the office in dispute are in full exercise of the control and management of the school

and its affairs have employed the teachers for the incoming school year and are in under color, one of the defendants having been regularly elected by the voters and three others having been appointed to fill vacancies at a meeting held for the purpose and claiming to have authority to make such appointments.

Upon such a record, our authorities are to the effect that it is not open to plaintiffs to have the question determined in an action of this character where the title is only presented as a collateral issue, but that the parties should try out the question of title in an action properly constituted and brought directly for the purpose. *Midgett v. Gray,* 158 N. C., 133; *Rhodes v. Love,* 153 N. C., 468; *Patterson v. Hobbs,* 65 N. C., 119. The question presented was fully discussed in one of the cases cited (*Rhodes v. Love, supra*), *Associate Justice Walker* delivering the opinion, and where it was held, among other things:

"That action by *mandamus,* brought by one claiming to be the duly elected and qualified treasurer of a graded school committee to compel the present occupant to deliver to him the books and papers of the office alleged to be wrongfully withheld, is not the proper remedy, and the action will be dismissed when the pleadings put the title to the office in issue, and that is the real matter in controversy.

"The title to a public office in dispute between two rival claimants must be determined by an action of *quo warranto,* or by an action in the nature of *quo warranto,* especially when the defendant is in possession of the office under a claim of right in him to hold it and exercise its function or perform its duties; and a *mandamus* to compel the surrender of the books and papers will not lie until the claimant has established the disputed title."

It may be well to note that defendants do not contend but that two of plaintiffs, W. W. Rogers and P. H. Mitchell, have full right to membership, they having been duly elected thereto by the voters at the election in May, but this is a contest between the two boards, and the defendants being in possession and exercise of the offices and under colorable claim of right their position can only be questioned by suit brought directly for the purpose. *Fuel Co. v. Staton,* at present term; *Comrs. v. McDaniel,* 52 N. C., 107; *Burke v. Elliott,* 26 N. C., 355; *Tar River Co. v. Neal,* 10 N. C., 520; *Brown v. O'Connel,* 36 Conn., 432; 8 Am. and Eng. Enc. (2d Ed.), p. 783 *et seq.*

And being, as stated, a contest between two rival boards, while it is admitted that two of plaintiffs are entitled to membership, the rightful organization of plaintiffs as a board is earnestly denied, and, furthermore, is involved in substantial doubt. To restrain the defendants, therefore, from any and all "interference in the affairs of the school" might result in serious hindrance and leave this important work for the

time being entirely without official supervision or control. Under such conditions, the public interests should receive due consideration in determining the right to injunctive relief. *Jones v. Lassiter,* 169 N. C., 750.

A position fully recognized in cases of this character by our statute law, even in actions brought for the direct purpose of trying the title, sec. 836, Revisal, chap. 12, sub-chap. XL, title *Quo Warranto,* making provision as follows: "In any civil action pending in any of the courts of this State wherein the title to any office is involved, the defendant being in the possession of said office and discharging the duties thereof, shall continue therein pending such action, and no judge shall make any restraining order interfering with or enjoining such officer in the premises; and such officer shall, notwithstanding any such order, continue to exercise the duties of such office pending such litigation and receive the emoluments thereof."

There is nothing in the case of *Salisbury v. Croom,* 167 N. C., 223, cited for plaintiff board, that in any way militates against our present decision. That was a contest between two individuals, each claiming to be the rightful member of the board of directors of the Central Hospital, and the question as to which of two rival boards had the right of present control of the property was in no way presented. The Court held that defendant Croom, having been appointed and duly confirmed by the Senate, was entitled to the position, and the official board was right in accepting him as such.

The same position is recognized here as to two of plaintiffs who were duly elected by the voters. No one disputes their right as members or to act as such. The third member who was so elected positively declined to serve, and this is one of the vacancies filled by the old board, claiming the right to do so under this statute of incorporation. It was stated on the argument, and accepted as true, that an action in the nature of *quo warranto* has been instituted for the purpose of determining this question between these boards, and for that reason we have not deemed it advisable to refer in detail to the testimony bearing on the claims of the respective parties. But a casual perusal of the record and facts in evidence disclose that defendant board is in possession and control of the school, its buildings and other property, and at least in under color of right, and under the principles stated their management and efforts to carry on the school and serve the public should not be interfered with by injunction until the issue has been finally decided in this action brought directly for the purpose.

There is no error in dissolving the injunction, and the judgment of the Superior Court to that effect is

Affirmed.

ROGERS *v.* POWELL.

CLARK, C. J., dissenting: This is not a *quo warranto* to try the title to office, but simply an injunction, which was temporarily granted, to restrain intruders from exercising certain duties when, upon unquestioned facts, they were acting without authority.

The Ahoskie School District had six trustees. On 7 May, 1917, an election was had for three members of said board. The encumbents, candidates for reëlection, were defeated and three new members elected. The regular day for the session of the board at which the new members should have appeared to take their seats was the first Tuesday in June following—*i. e.,* 5 June. But three of the old board, C. G. Powell, J. A. Williams, and M. D. Gatling (the last two of whom had been defeated of reëlection) met in session on 21 May, without notice to the newly elected trustee, and, assuming themselves to be the board, and without notice to him, declared vacant the position of one of the absent members (A. E. Garrett) and assumed to elect in his place one A. B. Cowan; and then again on 25 May they met, with Cowan present, and declared vacant the place of another absentee, L. T. Sumner, and elected to fill the same J. G. Garrett, and subsequently, upon the resignation of A. B. Cowan, they elected M. D. Gatling (who had been defeated at the election) in his place. On the first Tuesday in June, Powell (one of the three), J. R. Garrett, and A. B. Cowan, both of whom had been elected as above set out, without authority, met with said Gatling and declared the office of W. L. Curtis, one of the newly elected members, vacant because he had not qualified and appointed J. A. Williams (who had been defeated at the election) in his place, and then invited the other two newly elected members to sit with them, which was declined.

This was an injunction, brought by P. H. Mitchell and W. W. Rogers, two of the new members elected on 7 May, asking an injunction against C. G. Powell, one of the old members, and his three associates, who had all been illegally chosen in the ingenious manner just narrated, as intruders, from taking possession of the school building and property and interfering in any way with the management of the school.

A temporary restraining order was granted by *Kerr, J.,* 28 July, 1917, returnable before *Whedbee, J.,* 14 August, 1917, when it was dissolved, and the plaintiffs appealed.

It is apparent from this summary that the defendants were usurpers and should have been restrained until there was a legal meeting of a majority of the board.

The defendant's right to exercise any authority depends entirely upon the validity of the meeting on 21 May. That meeting was an absolute nullity, because, in the best view for the defendants, there were only three members present, which is not a majority of six, *Cotton Mills v.*

*Comrs.,* 108 N. C., 678; Rev., 2831 (2); and furthermore it was not held at the regular time, the first Tuesday in June. *Moore v. Comrs.,* 113 N. C., 128. The action taken by them in declaring the seat of one of the absent members vacant and attempting to fill it was a nullity, for three members out of six had no authority to take this or any other action, and consequently the subsequent meeting of these three men with the substitute chosen by them on 21 May, and all their subsequent conduct which reinstated two of the very men the people had put out, is invalid, because it is all based upon the meeting of 21 May, which was itself a nullity.

We do not know, and it is immaterial, what was the issue at the election on 7 May. But we do know that the three members of the old board were defeated for reëlection, and that the three new members were elected in their stead, and yet two of the men defeated by the people kept the new members out till they reinstated themselves.

Under a government which rests upon the consent of the governed, the voice of the people, whether in a school district or a township or in the State or nation, legally expressed, should govern. It matters not that this is only a school district. The methods herein attempted to set aside the duly expressed will of the people in this school district if attempted on a larger scale would have had serious consequences.

Of the three men who met on 21 May, two had been defeated of reelection. But if it be conceded that they were all three *prima facie* trustees of the school on 21 May, they were not a majority of six, and their conduct in vacating the office of an absent member and electing a substitute was without color of authority, and all subsequent action is vitiated thereby. Water cannot raise above its source, and as the meeting on 21 May was invalid, no subsequent action dating back to that meeting has any validity.

The courts should give no countenance to such disregard of the public will and to the methods thus resorted to to set it aside. The court should have continued the injunction and should have issued a mandatory injunction that the two newly elected members of the board (the other one of them not having accepted) and Powell, who was the only one of the three whose seats were not lost at the election or who was not holding another office in violation of the Constitution, should meet and organize. As there were then only three legal members of the board (two of the plaintiffs and Powell), they would have been the entire board, and these three could legally have filled vacancies till next election.

The arguments of defendants, appealing to technicalities based upon this being a *quo warranto,* is simply the traditional red herring drawn across the trail to divert attention from the real issue. We were told in

the argument by counsel on both sides that a *quo warranto* is pending in the court below to decide the title, and, pending such decision, the court should have continued the injunction with a mandatory order for the three valid members, as above stated, to hold a meeting and conduct the school until the *quo warranto* is decided. *Tise v. Whitaker,* 144 N. C., 507.

Nothing is more to be reprehended than conduct designed to set aside and thwart the popular will, whether this is done by force, by fraud, or by *finesse.* A loyal observance of the declaration of the people at the ballot box is the first duty of every citizen under our form of government.