THE STATE OF NORTH CAROLINA on the relation of E. EXUM ROBERTS v. SAMUEL J. CALVERT.

*Elections—Evidence—Office—Canvassing Boards.*

1. The returns of an election properly certified by the persons authorized to hold it, are evidence of the votes then and there cast, and throw the burden on him who alleges the contrary to prove it.

2. To invalidate an election, upon the ground of intimidation, the burden is upon the assailant to show that voters were kept from voting or compelled to vote otherwise than they would. Mere noise, confusion, or threats, will not suffice.

3. While it is irregular to permit other persons than the officers of election to count the ballots, yet, unless it appears affirmatively that the count was not correct, that fact will not be allowed to vitiate the election, especially when the judges accepted and certified the result thus ascertained as true.

4. Where the Board of County Canvassers illegally determined that one who had been elected to the office of Register of Deeds was not so elected, and that his opponent had been, but the latter failed to qualify and enter upon the duties of the office, whereupon the Board of County Commissioners declared the office vacant and appointed a third party ; *Held,* that this could not in anywise affect the right of the duly elected officer to have the action of the Board of Canvassers revised by the Courts.

5. The ruling in *Gatling* v. *Boone, ante,* 573, in respect to the powers of Canvassing Boards, re-affirmed.

This is a CIVIL ACTION, in the nature of *quo warranto,* and was tried before *Shipp, Judge,* at January Term, 1887, of NORTHAMPTON Superior Court.

It is alleged in the complaint that the relator was duly elected at the general election in November of 1886 to be the Register of Deeds for the county of Northampton for the term of office then next ensuing; that the Board of County Canvassers of that county falsely ascertained that the defendant was elected to be that officer at that election, by rejecting the return of the election from Harding's Store precinct, in Oconeechee township, and refusing to count the vote cast there, &c., which vote so rejected, if it had been counted, as it ought to have been, would have elected him by a plurality.

The defendant denied the allegations, and most of those in the complaint material, and, among other things, pleaded as follows:

"5. That he is advised and believes, and so alleges, that the said Canvassing Board, on the aforesaid day, duly, lawfully and judicially passed upon the question as to how many legal votes were cast for the office of Register of Deeds at said election, and then and there determined that there were cast

at said election for said office 2,890 votes, and that of that number the defendant, S. J. Calvert, received 1,406, and that the relator, E. Exum Roberts, received only 1,364 votes, being a plurality of 42 votes for the said S. J. Calvert, and that he is advised and believes that the said determination and judgment is binding and conclusive upon the relator and the rest of mankind, until the same is reversed by the Judge of the Superior Court in a proceeding properly constituted for that purpose."

The following issues were submitted to the jury, and the responses to each were as indicated at the end of each :

"1. Were the returns of the votes for Register of Deeds in Oconeechee township, Harding's Store, properly rejected by the Board of Canvassers?    No.

"2. Were the returns of the votes for Register of Deeds in North Wiccacanee township properly accepted by the Board of Canvassers?    Yes.

. "3. Did the relator receive a plurality of the votes cast at said election in November, 1886, in Northampton County, for Register of Deeds?    Yes.

"4. Did the County Commissioners properly declare the office of Register of Deeds vacant?    Yes."

On the trial there were numerous exceptions and assignments of error, as set forth in the case settled on appeal, but these are sufficiently adverted to in the opinion of the Court to understand them and their respective legal bearings.

The Court "adjudged and decreed that upon the allegations and admissions in the pleadings and verdict of the jury, the relator, E. Exum Roberts, is not entitled to the office of Register of Deeds for the county of Northampton, and that the respondent, S. J. Calvert, is entitled to said office and is rightfully in possession of the same ;" and from this judgment both parties appealed to this Court.

*Mr. R. O. Burton,* for the plaintiff.
*Mr. C. M. Busbee,* for the defendant.

MERRIMON, J., (after stating the case). We find it convenient to consider both appeals together and dispose of them by the same opinion.

The relator produced evidence on the trial tending to show that the Board of County Canvassers had erroneously rejected the return from and failed to count the vote cast at the "Harding's Store" voting place, and falsely ascertained that the defendant received a plurality of the votes cast at the election in the county.

The defendant, having pleaded in his answer that the determination of the Board mentioned, and its ascertainment of his election, was conclusive—certainly in an action like this, objected to the admission of all such evidence as irrelevant and incompetent to prove the material facts. The Court refused to sustain the objection, and this is assigned as error.

The question thus presented has been decided at the present term in *Gatling* v. *Boone, ante,* 573. Since the argument in that case we have heard elaborate arguments in this and other cases involving the same question, and have heard nothing, nor can we see any reason, that prompts us to change or modify the opinion we have heretofore expressed. On the contrary, we are satisfied that it is correct. The provision empowering the Board of County Canvassers to " open and canvass, and *judicially determine* the returns, and make abstracts," &c., cannot be construed as creating a jurisdiction to determine finally and conclusively the result of an election in any case, whether the same be for a county or other officer; nor does it contemplate that the decision of the Board of Canvassers shall be reviewed and affirmed, or corrected upon appeal, or by the writ of *certiorari,* as a substitute for an appeal to the Superior Court or this Court. Surely if the Legislature in-

tended to create such a jurisdiction—one so unusual and so novel—so important—affecting not only the rights of individuals, but very important rights of the public as well, it would have said so in terms that left little to implication and inference, and would have conferred authority and prescribed a course of procedure reasonably adequate for the purpose contemplated. No such statutory provision exists; there is a total absence of authority in the Board of County Canvassers to entertain an action—to regulate a litigation— a contest of the election—a proceeding of any kind, before them, to settle and determine the regularity, result and validity of the election at the voting places, to be begun and prosecuted on the part of any official or other person representing the public, or individuals claiming, as against each other, to have been elected, and to have rights growing out of the election. In the absence of such authority, expressly conferred or arising by necessary implication, the nature of the matter in every aspect of it forbids such interpretation of the clause of the statute, cited above, as that contended for by the counsel for the defendant. Nor is there the slightest provision in the statute regulating elections that any person dissatisfied with the determination of the Board mentioned shall have the right of appeal from the same to any Court; nor does it in terms or by the remotest implication repeal, alter or modify the statute (*The Code,* §§ 603—616,) prescribing the remedy in favor of persons claiming to have been elected to any office. It seems to us manifestly unreasonable to infer or presume that by the words to " open and canvass and jucially determine the returns, and make abstracts," &c., the Legislature intended to make the determination of the Board "final and conclusive" and thus deprive the public and individuals of the right to contest the result and validity of an election before the Superior Court; and it is quite as unreasonable to infer from them that it intended that the Board should have authority to devise a

summary proceeding to settle rights of so much importance. The purpose of the statute is simply what we have indicated in the case above cited, and of this we have not the slighest doubt.

The Court properly admitted in evidence the paper writing purporting to be the return of the election at "Harding's Store" voting place. It purported on its face to be a regular and proper return, showing, among other things, the number of votes cast there for the relator and the number cast for the defendant. The evidence in respect to it went directly to prove that the election was held; that the return was signed by the judges and registrar of the election there, and was delivered to one of their number appointed to attend the meeting of the Board of County Canvassers as a member thereof; that he took and delivered the return to the Canvassing Board, at the county seat, and acted as a member of the Board "until after the rejection by said Board of said paper aforesaid, when he got mad and left, and had nothing further to do with said canvass." It was an official document, having legal import and effect; it was authorized and required by the statute (*The Code*, §§ 2678—2690,) of officers charged with authority to hold the election, the purpose being to furnish evidence of the election and the vote cast as stated in it. It was not conclusive, but it was official and strong evidence; it appearing to be regular, proved the pertinent facts stated in it, *prima facie.* It put the burden on him who alleged the contrary to prove it clearly. Cooley Const. Lim., 625; *Howard* v. *Shields,* 16 Ohio, Sh. R., 184; Brightly's L. E. C., 378, 384, 288 ; McCrary on El., §§ 290–292.

The defendant contended that the election at the voting place in question was attended with such irregularites and confusion as rendered it void. There was evidence "that there were threats and intimidations used by relator's friends," and one witness testified, "that he was satisfied that

.but for the threats and intimidations respondent would have received a larger number of votes;" but there was no evidence that a single voter did not vote, or that one voted otherwise than as he desired to do, or that the vote cast was less—materially, or at all less—than the number of registered voters. Mere noise, confusion and empty threats cannot, of themselves, destroy the integrity of the election; to have that effect they must at least deter electors of reasonable firmness from voting, or drive them to vote through such fear and intimidation—otherwise than as they intended and desired to do, and this ought clearly to appear.

The evidence only tended to show confusion and threats; there was no evidence of violence nor display of arms or other implements of force—so far as appeared, no one left the voting place, no one failed to vote who desired to do so, and one of the judges of election said that he thought it was a fair one. Accepting the evidence as true, there was no such confusion, or threats, or violence, as rendered the election void, and the Court properly so decided. Cooley Const. Lim., 621; McCrary on El., § 416, *et seq.*

It seems that the defendant intended to contend that the election at "Harding's Store" was not held at the proper place. If so, the objection is so obscurely stated in the record that we cannot pass upon its merits. The evidence—the return and the testimony of the witnesses—went to prove that it was properly held at "Harding's Store," in another store-house so near to it as that all the electors who desired to vote had fair opportunity to do so. The burden was on the defendant to prove the contrary, not by evidence and circumstances that could give rise to mere conjecture or remote inference, but by such evidence as reasonably proved the fact alleged, and destroyed the effect *prima facie* of the return and the evidence offered in support of it.

There was evidence tending to prove that persons not sworn, other than the judges of the election, counted, or

assisted in counting, the ballots as they were taken from the ballot-box. This was certainly irregular and a practice that ought not to be encouraged, but if the ballots were truly counted it would not of itself destroy the election at the particular voting place. There was no affirmative evidence to prove that the ballots were not fairly and truly counted— it was left to vague inference that it might have been otherwise. There was evidence, however, that they were truly counted, in that the judges and registrar accepted the count as true, and certified the return. *People* v. *Cook*, 8 N. Y., 67; Bright. Lead. El. Cases, 423–454; Ibid., 328–333.

The Board of County Canvassers rejected the return in question, and ascertained that the defendant was elected to be Register of Deeds of the county named, and so declared in accordance with the forms of law. Afterwards he failed, for some reason not stated, to appear before the County Commissioners and qualify as Register of Deeds, in pursuance of such his ascertained election.

Thereupon the County Commissioners declared this office vacant, and at once proceeded to elect the defendant to be such officer, to fill the vacancy thus declared to exist. It is contended that the relator was present at such last mentioned election, and did not claim the office, and thus waived any right he had to it. It appears, however, that the relator was present with his counsel, and moved the Commissioners to reconsider the vote by which they elected the defendant, and to declare that he was elected and that he be allowed to qualify as such officer, but he did not tender any official bond.

We do not deem it necessary to inquire into the propriety of the action of the County Commissioners, or to consider any exceptions or assignment of error in respect thereto, because they could only induct into the office of Register of Deeds such person elect as the Board of County Canvassers ascertained to be elected, but, on the contrary, they determined

that he was not. The Commissioners had no authority to institute an inquiry as to the election, and determine that the relator was or was not elected. There was no necessity prompting him to do the vain thing of asking them to do what they had no authority to do. Nor could they destroy or deprive him of his right to the office in question, acquired by his election, by declaring the office vacant, as was done, and appointing the defendant to fill the vacancy so declared. The latter, or any other person so appointed and taking the office, did so subject to the right of the relator thereto, to be asserted and enforced through the proper Courts. The mere fact that the relator knew that the County Commissioners declared such vacancy, and appointed the defendant to fill the same, could not conclude him as to his right. He had no power to prevent their action, and they could not afford him a remedy. Moreover, it is very certain, from what appears, that he and his counsel did not intend that he should waive or abandon his right. If he was elected, as he alleges, and as it appears he was, he is entitled to the office, no matter how the defendant came to be the present incumbent of it.

The fourth issue, to-wit: " Did the County Commissioners properly declare the office of Register of Deeds vacant?" submitted to the jury was, therefore, wholly immaterial. Whether the County Commissioners properly or improperly declared the office vacant could not affect the relator's right to it, and the issue, in this respect, ought not to have been submitted. His right was paramount to that of the defendant, notwithstanding the action mentioned or any action of the County Commissioners. The Court ought, therefore, to have disregarded the verdict of the jury upon the first issue.

It appeared that the relator received a plurality of the votes cast at the election mentioned for the office in controversy, and that he was elected thereto. The Court ought, therefore, to have given judgment accordingly in his favor.

There is error. The judgment must be reversed, and judgment entered in favor of the relator. To that end let this opinion be certified to the Superior Court.

Error.