This is an action in the nature of quo warranto, in which plaintiff claims to be State Librarian, and alleges that defendant is in possession of the office and unlawfully withholds the same from him. Defendant, answering, admits that he is in possession of the office, performing its duties and receiving its emoluments; but he denies that he is holding it wrongfully or unlawfully, and alleges that he was duly elected thereto on 8 January, 1895, for a term of two years next ensuing.
Under the view we take of the case it is not necessary for us to consider or pass upon defendant's right to this office. The plaintiff's right to recover depends upon his right to the office. If he is not entitled to it, it is a matter of no importance to him who is. It is true (160) that if plaintiff is entitled to the office, it necessarily follows that defendant is not; but it does not necessarily follows that defendant is entitled to it if plaintiff is not.
Prior to 13 March, 1895, the Board of Trustees of the State Library under existing law elected to and filled this office. On that day (13 March, 1895) the Legislature passed and ratified an act repealing the law authorizing the board of trustees to elect, and provided for the election of this officer by the Legislature. And on the same day, to-wit, 13 March, 1895, the plaintiff claims that he was duly elected State Librarian by the Legislature pursuant to said act. And this not being a bill enacted into a law, ratified and signed by the presiding officers of Senate and House and deposited in the office of Secretary of State, which then becomes the evidence of its passage (Carr v. Hoke, 116 N.C. 223; U.S. v. Ballin,144 U.S. 4), it becomes necessary for plaintiff to introduce the records of the Legislature for the purpose of proving his election and right to the office he was claiming. These records show *Page 115 
that on the morning of 13 March there was a roll call of the House, a quorum answered, and the House proceeded to business. They also show that there was a proposition in both branches of the Assembly (Senate and House) to go into the election of State Librarian; that these motions prevailed, and both the President of the Senate and the Speaker of the House appointed two tellers each to take this vote. And they reported that in the Senate there were 26 votes cast, 25 being for the plaintiff, and one against; and in the House there were 48 votes cast for the plaintiff, and none against him. It is admitted by plaintiff that there must be a quorum present to do business, or in this case to elect the plaintiff to the office he claims. But he claims that, it appearing there was a quorum present that morning, and it not appearing there had been an adjournment since, it will be (161) presumed that there continued to be a quorum present. We think this is undoubtedly true, that the quorum will be presumed until it shall appear there is not one. Cushing on Elections, 2 Ed., 369. This is usually made to appear by what is called a division; and this is usually had after a vote by yeas and nays, when the presiding officer announces the votes and some opposing member doubts the correctness of the announcement and demands a division — a call of the body. Cushing, sec. 1798. And, strictly speaking, this is what is called a division. Cushing Legislative Assemblies, sec. 1814.
The original purpose of a division was for the purpose of ascertaining who voted "Aye" and who voted "No," and it was effected in this way: the ayes occupied one part of the hall and the noes another and there remained until the tellers appointed counted them. In this way it came to be called a division. In more modern assemblies it is more usually effected by a call of the house, a yea or nay vote when each member's name is called. Cushing, sec. 1615. This mode is used for two purposes, one to determine on which side the majority voted and also for the purpose of determining whether there is a quorum present. U.S.v. Ballin, supra. In this case there was no viva voce vote preceding the roll call. With this exception there seems to have been all done that is usually done before a division, which is now usually had by a call of the roll. Cushing, sec. 1615. Why this was not done we do not know. Article II, sec. 9, requires that in all elections under this Constitution the vote shall be viva voce. And if this section applies to this election, it does not mean a roll call, but a vote by voice and not by ballot. And if the vote had been taken that way and announced by the presiding officers in favor of plaintiff and no division called for, (162) the presumption contended for by plaintiff would have availed *Page 116 
him. But when the roll was called, the name of each member voting recorded, and the tellers appointed report the number voting for plaintiff and the number voting against him — a modern division — we have the facts, and they must prevail over the presumption which existed in favor of a quorum before that time. Cooley Const. Lim., p. 168; U.S. v. Ballin,supra. It may be there was a quorum present when this vote was taken. But if there was it does not appear to us, and we have no means of finding out whether there was or not, and no authority to do so if we had the means. And if they were present, whether they could have been compelled to vote is not before us, as there was no such proposition made, so far as we know.
But it seems to be conceded that the Speaker of the House of Representatives of the United States could not compel a member to vote. Nor had he any right to count members present and not voting, to make a quorum, until the House adopted a rule to that effect. He then counted nonvoting members present to make up a quorum, and the Supreme Court of the United States sustained his action. U.S. v.Ballin, 144 U.S. 1. So may the Legislature of North Carolina adopt a similar rule, as there is nothing in the Constitution to prevent its doing so. But it has not adopted such a rule, and under the authority of U.S. v. Ballin, supra, we suppose the presiding officers were powerless, if a quorum was actually present, either to make them vote or to count them to make up a quorum. This brings us to the consideration of what is a quorum. They are of two kinds, one fixed by the Constitution or power creating the body or assembly. In this way a majority of a majority may constitute a quorum and do business. But where (163) the quorum is not fixed by the Constitution or the power that creates the body, the general rule is that a quorum is a majority of all the members (Cotton Mills v. Commissioners, 108 N.C. 678; Cushing, sec. 247; U.S. v. Ballin, supra), and a majority of this majority may legislate and do the work of the whole. There is no constitutional quorum, that is, a number prescribed by our Constitution that shall constitute a quorum. We therefore fall under the general rule applying to legislative bodies. U.S. v. Ballin, supra.
The Legislature of North Carolina consists of 170 members, fifty in the Senate and one hundred and twenty in the House. Therefore it takes the presence of 26 Senators to constitute a quorum in the Senate and 61 members of the House. In this election 26 Senators voted, which was a majority of that body, and a quorum. But in the House there were but 48 members who voted. This, we see, was less than a quorum. For this reason plaintiff has failed to establish his right to the office. *Page 117 
There were various questions presented as to the defendant's rights. But the view we have taken of the case makes it unnecessary for us to consider them, and we do not. The judgment of the court below is
Affirmed.
Cited: Day's case, 124 N.C. 383; Cherry v. Burns, ib., 766.
(164)