STATE OF NORTH CAROLINA UPON THE RELATION OF ROY FREEMAN, GLENN REEMS, MARTY BUCKNER, AND VAUGHN CARTER, v. E. Y. PONDER AND HUBERT DAVIS.

(Filed 31 October, 1951.)

1. **Elections § 18a—When private relators institute action, allocation of peremptory challenges is properly made on basis of parties as constituted.**

In a civil action in the nature of *quo warranto* by private relators upon leave of the Attorney-General to determine conflicting claims of defendants to a public office, G.S. 1-516, such relators may take such position as they deem consistent with truth, and the law does not require them to be neutral as between the claimants, and therefore the trial judge correctly denies the motion of one defendant that the other defendant be designated a party plaintiff on the ground that the interests of relators and such other defendant are identical, since such other defendant, not having obtained leave of the Attorney-General to sue, may not be made a party plaintiff by the trial court, and thus alter the statutory allocation of peremptory challenges to the poll.

**2. Jury § 2—**

In a civil action each side is entitled to not in excess of six peremptory challenges regardless of how numerous the parties on either side may be, subject only to the statutory exception that the trial judge has the discretionary power to increase the number of peremptory challenges so as to allow each defendant or class representing the same interest not more than four peremptory challenges, G.S. 9-23, in which instance the trial court's decision is final.

**3. Elections § 18c—**

The issues of fact in a civil action in the nature of *quo warranto* to determine conflicting claims to a public office are to be determined by the jury and not the court, G.S. 1-172, and therefore a motion by one party that the judge declare him to be the duly elected officer is properly refused, *a fortiori* when the evidence as of that time tends to establish the election of his adversary.

**4. Same—**

In a civil action in the nature of *quo warranto* to determine conflicting claims to a public office the returns made by the registrars and judges of election, G.S. 163-85, and the abstract of votes prepared by the county board of elections, G.S. 163-88, are official documents containing data germane to the issue, and are properly admitted as substantive evidence upon proper authentication.

**5. Same—**

A tally sheet of a person who assisted in counting the ballots at a particular precinct is competent to corroborate his testimony to like effect upon the trial.

**6. Evidence § 24—**

In order to be competent as substantive evidence testimony must be relevant and its reception must not be forbidden by any specific rule of law.

**7. Same—**

Testimony is relevant if it reasonably tends to establish the probability or the improbability of a fact in issue raised by the pleadings in the action.

**8. Elections § 18c: Pleadings § 24c—**

Where the pleadings in an action in the nature of *quo warranto* to determine conflicting claims to a public office raise the single issue as to whether returns from specified precincts were altered after they were signed by the registrars and judges of election and before they were canvassed by the county board of elections, evidence tending to show the casting of illegal ballots, or other matters relating to the election but having no relevancy to the issue as to whether the returns had been altered as alleged, is irrelevant to the issue of fact raised by the pleadings and is properly excluded.

**9. Same—**

In an action in the nature of *quo warranto* to determine conflicting claims to a public office, a party is precluded from offering evidence in direct conflict with a positive averment contained in his pleading.

FREEMAN v. PONDER.

**10. Evidence § 37—**

Where documents are introduced in evidence, oral testimony of their contents is properly excluded.

**11. Evidence § 41: Elections § 18c—**

In an action in the nature of *quo warranto* to determine conflicting claims to a public office, testimony of statements made by third persons tending to establish irregularity in the casting or counting of ballots is properly excluded as hearsay.

**12. Evidence § 19—**

Where testimony competent solely to impeach the later testimony of a witness is not offered a second time after the witness has testified, its exclusion cannot be held for error.

**13. Appeal and Error § 39e—**

The exclusion of evidence cannot be held prejudicial when the record discloses that the answer of the witness, had he been permitted to testify, would not have been favorable or that the witness had already testified that he had no knowledge of the matter.

**14. Same—**

The exclusion of a single item of evidence competent only for the purpose of corroborating a witness on one minute point will not be held prejudicial in a protracted trial with voluminous testimony, since upon such record its exclusion could not have affected the verdict of the jury.

**15. Appeal and Error § 39f—**

The charge will not be held for error when it is not prejudicial when read contextually.

**16. Elections § 18c—**

In an action in the nature of *quo warranto* to determine the election to public office as between two claimants, separate issues as to whether each party was duly elected to the office at the general election in question are sufficient to present all controverted matters to the jury and are proper.

VALENTINE, J., took no part in the consideration or decision of this case.

APPEAL by defendant, Hubert Davis, from *Parker, J.*, and a jury, at April Term, 1951, of MADISON.

Civil action in the nature of *quo warranto* brought by private relators, upon leave of the Attorney-General, to determine conflicting claims to the office of Sheriff of Madison County.

For convenience of narration, the defendant, E. Y. Ponder, is hereafter called Ponder, and the defendant, Hubert Davis, is hereafter designated as Davis.

There is no substantial dispute in respect to the matters stated in the numbered paragraphs set out below.

1. Ponder, a Democrat, and Davis, a Republican, were opposing candidates for the office of sheriff at the general election held in the twenty-

four precincts of Madison County on 7 November, 1950. Both of them possessed the qualifications prescribed by law for that office.

2. After the polls were closed, the registrar and judges of election in each precinct counted the ballots cast in their precinct, and prepared and certified to the Madison County Board of Elections written returns stating the number of votes received by each candidate for each office in their precinct.

3. The Madison County Board of Elections met at the courthouse in Marshall at eleven o'clock a.m., on 9 November, 1950, and remained in session two days for the avowed purpose of canvassing the votes cast in the county at the general election, preparing abstracts of such votes, determining the results of the voting for county and township offices and for the house of representatives, and performing the other duties devolving upon it.

4. At such meeting "certain protests were filed by the Republican candidates for Sheriff and Clerk of the Superior Court and by the Democratic candidate for sheriff, all alleging irregularities. After some investigation as to the nature of these charges," the Madison County Board of Elections, by a majority vote, "found as a fact that all these charges were frivolous, . . . and accepted all returns as certified by the precinct officials."

5. When the written returns of the registrars and judges of election of all the twenty-four precincts of Madison County were opened, examined, and tabulated by the Madison County Board of Elections, they showed on their face that the total number of votes cast for each candidate for the office of sheriff in the entire county was as follows: 3,513 for Ponder, and 3,482 for Davis.

6. The Madison County Board of Elections, by a majority vote, adopted abstracts of votes conforming to the matters appearing on the face of the returns from the various precincts; found that the total number of votes cast for each candidate for the office of sheriff in Madison County was as follows: 3,513 for Ponder, and 3,482 for Davis; and declared that Ponder had been elected sheriff over Davis by a majority of 31 votes. Within the ensuing ten days, the Chairman of the Madison County Board of Elections furnished Ponder with a certificate of election, and notified him to appear at the courthouse of Madison County on the first Monday in December, 1950, to qualify for sheriff for the four-year term beginning on that day.

7. Davis was the incumbent of the Sheriffalty of Madison County for the term ending on the first Monday in December, 1950. On that day Ponder presented his certificate of election to the officials of Madison County, took the oath and gave the bond required of a sheriff by law, and demanded that Davis surrender to him the office of sheriff with its accom-

panying properties and records. Notwithstanding he had been excluded from the sheriffalty by the adjudication of the county board of elections, Davis refused to accede to Ponder's demand, and remained in physical possession of the office of sheriff and its properties and records and undertook to exercise its duties until shortly before the commencement of this action when he was required to surrender possession of the office and desist from the exercise of its functions by a mandatory injunction issued in another action. Ponder and Davis have been rival claimants of the Sheriffalty of Madison County for the four year term beginning on the first Monday in December, 1950, since the general election of 7 November, 1950. But neither of them has ever applied to the Attorney-General for leave to bring an action in the nature of *quo warranto* under the provisions of Article 41 of Chapter 1 of the General Statutes to determine their conflicting claims to the office.

8. On 5 January, 1951, Roy Freeman, Glenn Reems, Marty Buckner, and Vaughn Carter, who are private citizens, residents and taxpayers of Madison County, made application to the Attorney-General for leave to bring an action in the nature of *quo warranto* in the name of the State upon their relation against both Ponder and Davis to try the conflicting claims to the office of Sheriff of Madison County, and tendered to the Attorney-General satisfactory security to indemnify the State against all costs and expenses which might accrue in consequence of the action. On the same day, the Attorney-General granted leave to the applicants, who are hereafter called the relators, to bring such suit for such purpose, and the relators thereupon brought this action against both Ponder and Davis to try the title to the Sheriffalty of Madison County.

The complaint of the relators recounts the facts stated in the numbered paragraphs set forth above, and makes the additional averment that the total number of votes actually cast at the general election in Madison County for each candidate for the sheriffalty was as follows: 3,513 for Ponder, and 3,482 for Davis. It prays "that E. Y. Ponder be declared the duly elected and qualified Sheriff of Madison County, North Carolina, for the four-year term beginning on the first Monday in December, 1950, and ending the first Monday in December, 1954."

The answer of the defendant E. Y. Ponder admits all of the allegations of the complaint, and prays for the same relief as that sought by the relators.

The answer of the defendant Hubert Davis states in detail his claim to the sheriffalty. His answer alleges, in substance, that a true count of the votes given to each candidate for the office of sheriff was made in each of the twenty-four precincts of Madison County immediately after the polls were closed on 7 November, 1950; that such true count disclosed that Davis had received a majority of the votes actually cast for the two

candidates for sheriff, and consequently had been elected to that office; that upon the completion of the count, the registrars and judges of election of all of the twenty-four precincts prepared and certified to the Madison County Board of Elections written returns stating the true count; that before the returns were delivered to the Madison County Board of Elections, five of them, to wit, the returns for the precincts designated as Township No. 1 Ward 4, Township No. 6, Township No. 7, Township No. 8 Ward 2, and Township No. 15, were fraudulently altered "with intent to deprive . . . Davis of the office of Sheriff of Madison County to which he had been . . . duly elected"; that the returns for Township No. 1 Ward 4 were fraudulently altered to show the state of the poll for that precinct to be 117 for Ponder and 128 for Davis, whereas the true count for such precinct was 107 for Ponder and 132 for Davis; that the returns for Township No. 6 were fraudulently altered to show the state of the poll for that precinct to be 200 for Ponder and 25 for Davis, whereas the true count for such precinct was 158 for Ponder and 25 for Davis; that the returns for Township No. 7 were fraudulently altered to show the state of the poll for that precinct to be 165 for Ponder and 117 for Davis, whereas the true count for such precinct was 155 for Ponder and 117 for Davis; that the returns for Township No. 8 Ward 2 were fraudulently altered to show the state of the poll for that precinct to be 184 for Ponder and 52 for Davis, whereas the true count for such precinct was 159 for Ponder and 52 for Davis; that the returns for Township No. 15 were fraudulently altered to show the state of the poll for that precinct to be 295 for Ponder and 264 for Davis, whereas the true count for such precinct was 281 for Ponder and 264 for Davis; and that in consequence of these fraudulent alterations the so-called official returns received, tabulated, and accepted by the Madison County Board of Elections seemingly changed the result of the election by erroneously crediting Ponder with 101 votes more than the number actually received by him and Davis with 4 votes fewer than the number really cast for him. Although the answer of Davis asserts in general terms that there was much illegal voting at the election in question, it does not allege that a single illegal vote was cast or counted for Ponder. Its prayer is that the defendant Hubert Davis "be declared the duly elected and qualified Sheriff of Madison County . . . for the four-year term beginning December 4, 1950."

The relators and Ponder replied to the answer of Davis, denying that there had been any alteration of the returns of the five designated precincts.

The trial of the action consumed virtually two weeks, and produced an appeal record of 375 pages. All of the parties presented evidence before the trial jurors, who were summoned from Yancey County under

the provisions of G.S. 1-86 to insure a fair and impartial trial of the cause. The testimony of the relators and that of Ponder tended to establish their allegations and disprove those of Davis, and the evidence of Davis tended to substantiate his allegations and negative those of the relators and Ponder.

These issues were submitted to the jury:

1. Was E. Y. Ponder duly and legally elected Sheriff of Madison County at the General Election held on 7 November, 1950?

2. Was Hubert Davis duly and legally elected Sheriff of Madison County at the General Election held on 7 November, 1950?

The jury answered the first issue "Yes," and left the second issue unanswered. The trial judge entered judgment on the verdict adjudging "that the defendant E. Y. Ponder is the duly and legally elected Sheriff of Madison County, and was so elected in the General Election held on November 7, 1950." The defendant Hubert Davis excepted to the judgment, and appealed to the Supreme Court, making assignments of error sufficient to raise the questions hereinafter considered.

*Kester Walton* for the relators Roy Freeman, Glenn Reems, Marty Buckner, and Vaughn Carter, appellees.

*J. W. Haynes, A. E. Leake,* and *George A. Shuford* for the defendant, E. Y. Ponder, appellee.

*J. M. Baley, Jr.,* and *Clyde M. Roberts* for the defendant Hubert Davis, appellant.

ERVIN, J. Before the trial jurors were selected or sworn, Davis made a motion alleging in detail that the interests of the relators and Ponder were "identical and opposed to those of the defendant Davis" and praying "that the relators and defendant Ponder be permitted to exercise the six peremptory challenges to the jury allowed by statute to one party in a civil action and that this defendant be permitted to exercise the six peremptory challenges to the jury allowed by statute to the other party to a civil action, or that the defendant . . . Ponder be, in the discretion of the court, designated as a party-plaintiff and that his answer be treated as a complaint." The motion was resisted by the relators and Ponder. The former alleged that they brought the "action in good faith and of their own volition as citizens and taxpayers of Madison County for the sole . . . purpose of having a judicial determination made of the . . . controversy . . . as to who was legally entitled to hold the office of Sheriff of Madison County . . . as a result of the election held November 7, 1950," and the latter asserted that he could not be made a party plaintiff because he did "not have leave of . . . the Attorney-General . . . to institute this action."

The trial judge ruled that the relators were entitled to six peremptory challenges under the provisions of G.S. 9-22, and entered an order denying "the motion of the defendant Davis that the defendant . . . Ponder be . . . designated as a party plaintiff and that his answer be treated as a complaint." The order recited, however, "that there are divers and antagonistic interests between the defendants Ponder and Davis" and made this adjudication: "It is ordered and decreed by the Court, in its discretion, that the number of challenges to each defendant be and is hereby increased to four, that is, the defendant Ponder is to have four challenges, and the defendant Davis is to have four challenges, under Section 9-23, General Statutes of North Carolina." Davis noted an exception to this order.

After Davis had used four peremptory challenges, he undertook to challenge two of the trial jurors, namely, Thad Bradford and Vance Hensley, peremptorily, and the trial judge disallowed such challenges on the ground that Davis had already exhausted the peremptory challenges allotted to him by law. Davis took exceptions to these rulings.

He complains that the relators and Ponder sought the same relief, and that in consequence the order and rulings of the trial judge permitted "his opposition to have ten peremptory challenges to his four."

Be this as it may, the propriety of the order and rulings relating to peremptory challenges is plain when due heed is paid to general rules of practice created by pertinent statutes. If we are to have a government of laws rather than one of men, lawsuits must be tried according to general rules of procedure established by law for all like cases. Judges cannot be expected or permitted to devise special rules on the spur of the moment to fit the supposed exigencies of particular trials.

The statutes codified as Article 41 of Chapter 1 of the General Statutes prescribe a specific mode for trying the title to a public office. *Rogers v. Powell,* 174 N.C. 388, 93 S.E. 917; *Burke v. Commissioners,* 148 N.C. 46, 61 S.E. 609; *Ellison v. Raleigh,* 89 N.C. 125. Such relief is to be sought in a civil action. G.S. 1-514; *Cozart v. Fleming,* 123 N.C. 547, 31 S.E. 822. But a private person cannot institute or maintain an action of this character in his own name or upon his own authority, even though he be a claimant of the office. *Saunders v. Gatling,* 81 N.C. 298. The action must be brought and prosecuted in the name of the State by the Attorney-General, G.S. 1-515; or in the name of the State upon the relation of a private person, who claims to be entitled to the office, *S. v. Carter,* 194 N.C. 293, 139 S.E. 605; *Harkrader v. Lawrence,* 190 N.C. 441, 130 S.E. 35; *Smith v. Lee,* 171 N.C. 260, 88 S.E. 254; *Stanford v. Ellington,* 117 N.C. 158, 23 S.E. 250, 30 L.R.A. 532, 53 Am. S. R. 580; *Rhodes v. Love,* 153 N.C. 468, 69 S.E. 436; or in the name of the State upon the relation of a private person, who is a citizen and tax-

payer of the jurisdiction where the officer is to exercise his duties and powers. *Midgett v. Gray,* 158 N.C. 133, 73 S.E. 791; *Barnhill v. Thompson,* 122 N.C. 493, 29 S.E. 720; *Houghtalling v. Taylor,* 122 N.C. 141, 29 S.E. 101; *Hines v. Vann,* 118 N.C. 3, 23 S.E. 932; *Foard v. Hall,* 111 N.C. 369, 16 S.E. 420. Before any private person can commence or maintain an action of this nature in the capacity of a relator, he must apply to the Attorney-General for permission to bring the action, tender to the Attorney-General satisfactory security to indemnify the State against all costs and expenses incident to the action, and obtain leave from the Attorney-General to bring the action in the name of the State upon his relation. G.S. 1-516; *Cooper v. Crisco,* 201 N.C. 739, 161 S.E. 310; *Midgett v. Gray,* 159 N.C. 443, 74 S.E. 1050. A single action may be brought against all persons claiming the same office to try their respective rights to the office. G.S. 1-520.

Since Ponder had no leave from the Attorney-General permitting him to sue as a relator, he was incapacitated by law to prosecute the instant action against Davis. The trial judge could not confer upon Ponder the legal power denied to him by positive legislative enactment through the simple expedient of designating Ponder a party-plaintiff and treating his answer as a complaint. For this reason, the motion of Davis was rightly denied.

Challenges to the polls, *i.e.,* to the individual jurors, are of two kinds: Challenges for cause; and peremptory challenges. A challenge for cause is a challenge to a juror for which some cause or reason is assigned. *S. v. Levy,* 187 N.C. 581, 122 S.E. 386. A peremptory challenge is a challenge "which may be made or omitted according to the judgment, will, or caprice of the party entitled thereto, without assigning any reason therefor, or being required to assign a reason therefor." 50 C.J.S., Juries, section 280. See, also, these North Carolina decisions: *Oliphant v. R. R.,* 171 N.C. 303, 88 S.E. 425; *Dupree v. Virginia Home Insurance Co.,* 92 N.C. 417. The right to challenge jurors for cause may be exercised without limit as to number so long as the cause or reason assigned is sufficient. 50 C.J.S., Juries, section 268. It is otherwise, however, with respect to peremptory challenges. A litigant cannot exercise any more peremptory challenges than the number allowed to him by law. *S. v. Powell,* 94 N.C. 965; *Capehart v. Stewart,* 80 N.C. 101.

The general rule regulating the right of peremptory challenge in civil actions is embodied in G.S. 9-22, which specifies that "the parties, or their counsel for them, may challenge peremptorily six jurors . . . without showing any cause therefor." This general rule limits all of the parties on one side of a civil case to a total of six peremptory challenges, no matter how numerous such parties may be. *Bryan v. Harrison,* 76 N.C. 360.

The general rule is subject to this statutory exception: If there are two or more defendants, and their interests are diverse and antagonistic, the judge may in his discretion, apportion the six peremptory challenges among the defendants, or he may increase the number of peremptory challenges, so as to allow each defendant or class representing the same interest not more than four peremptory challenges. The statute which creates this exception, i.e., G.S. 9-23, expressly stipulates that "the decision of the judge as to the nature of the interests and the number of challenges shall be final."

The relators had plenary authority to make both Ponder and Davis party defendants in this action for the purpose of trying their respective claims to the Sheriffalty of Madison County. The law did not require them to assume a posture of neutrality between the rival claimants. Indeed, it contemplated that they should take such position in the litigation as they deemed consistent with truth. The general statutory right to six peremptory challenges devolving upon them as all the parties on one side of the case was not annulled or impaired by their assertion that justice lay with Ponder, or by Ponder's concurrence in that assertion. The statute creating the exception to the general rule regulating peremptory challenges in civil actions clothed with finality the decision of the trial judge awarding four peremptory challenges to each of the defendants. These things being true, the exceptions to the rulings on the peremptory challenges are untenable.

In passing from this phase of the litigation, we think it not amiss to make some additional observations. In conformity with their statutory duties, the Madison County Board of Elections adjudged that Ponder was elected sheriff at the general election of 7 November, 1950, and the Chairman of the Madison County Board of Elections furnished Ponder with a certificate of election reciting that conclusion. G.S. 163-86, 163-91, and 163-92. The adjudication of the Board and the resultant certificate of election constituted conclusive evidence of Ponder's right to the sheriffalty in every proceeding except a direct proceeding under Article 41 of Chapter 1 of the General Statutes to try the title to the office. *Ledwell v. Proctor*, 221 N.C. 161, 19 S.E. 2d 234; *Cohoon v. Swain*, 216 N.C. 317, 5 S.E. 2d 1; *Cozart v. Fleming, supra; Gatling v. Boone*, 98 N.C. 573, 3 S.E. 392; *Swain v. McRae*, 80 N.C. 111. Undoubtedly Davis could have obtained leave from the Attorney-General to bring such direct proceeding against Ponder and could have secured to himself as sole relator in such proceeding the statutory right to six peremptory challenges. Instead of asserting his claim to the office in the lawful mode, Davis undertook to establish it by a species of physical force. It necessarily follows that if he was disadvantaged by the rulings relating to peremptory challenges, he was simply hoisted with his own petard.

When the relators had produced their evidence and rested their case, Davis moved "that he be declared by the Court to be the duly elected Sheriff of Madison County." The judge denied the motion, and Davis excepted. The exception lacks validity. Under the Code of Civil Procedure, the relators and Ponder had the right to have the issues of fact joined on the pleadings tried by the jury. G.S. 1-172. The motion called on the judge to usurp the function of that body. *Sparks v. Sparks*, 232 N.C. 492, 61 S.E. 2d 356. Besides, all the evidence before the court at the time the motion was made tended to establish the election of Ponder.

Davis reserved exceptions to the admission of these writings: (1) The returns made by the registrars and judges of election in obedience to G.S. 163-85 stating the votes cast for the candidates for the office of Sheriff in the twenty-four precincts of Madison County; (2) the abstract of votes for county officers prepared by the Madison County Board of Elections in compliance with G.S. 163-88 reciting the votes cast for the candidates for the office of Sheriff in Madison County as a whole; and (3) a tally sheet kept by Ponder's witness, Winston Rice, who assisted in counting the ballots in the precinct known as Township No. 1 Ward 4. Inasmuch as the returns and abstract were official documents of the election officials, contained data germane to the issue, and were properly authenticated, they were admissible as substantive evidence. *Roberts v. Calvert*, 98 N.C. 580, 4 S.E. 127; 29 C.J.S., Elections, section 276. The tally sheet was identified by Winston Rice and two other witnesses, contained data agreeing with Winston Rice's testimony at the trial, and in consequence was competent to corroborate him. *Bowman v. Blankenship*, 165 N.C. 519, 81 S.E. 746.

Davis also saved exceptions to the exclusion of testimony. The task of ruling on these exceptions is much simplified by focusing the judicial gaze on the basic principle which governs the admissibility of evidence.

To be admissible as substantive evidence, testimony must satisfy this twofold requirement: (1) It must be relevant; and (2) its reception must not be forbidden by some specific rule of law. Stansbury on North Carolina Evidence, section 77; Wigmore on Evidence (3rd Ed.), Sections 9-10.

Testimony is relevant if it reasonably tends to establish the probability or the improbability of a fact in issue. *Johnson v. R. R.*, 140 N.C. 581, 53 S.E. 362; *Pettiford v. Mayo*, 117 N.C. 27, 23 S.E. 252; *S. v. Brantley*, 84 N.C. 766; *S. v. Vinson*, 63 N.C. 335; *In re Cushman's Estate*, 213 Wis. 74, 250 N.W. 873; Stansbury on North Carolina Evidence, Section 78. For this reason, the relevancy of evidence in a civil action is to be tested by the pleadings, which define the facts put in issue by the parties. *Parrish v. R. R.*, 221 N.C. 292, 20 S.E. 2d 297.

There is no allegation in the case at bar that any illegal votes were cast or counted for the defendant Ponder. The pleadings raise this single issue of fact: Were the returns from five specific precincts, to wit, Township No. 1 Ward 4, Township No. 6, Township No. 7, Township No. 8 Ward 2, and Township No. 15, altered after they were signed by the registrars and judges of election and before they were canvassed by the county board of elections by falsely crediting Ponder with more votes than the number actually received by him and Davis with fewer votes than the number really cast for him?

Davis excepted to rulings of the trial judge excluding these things: The registration and poll books of the nineteen precincts whose returns were not in dispute; testimony showing that on the first Monday in December, 1950, Davis, who had been excluded from the office by the adjudication of the county board of elections, undertook to qualify as sheriff by signing an oath and executing a bond in the forms prescribed by statute; testimony indicating that the number of county ballots delivered by the county board of elections to each precinct prior to the election exceeded the number of county ballots allegedly cast in the precinct at the election; testimony pointing out that W. Flynn, whose name was recorded on the poll book of Township No. 1 Ward 4, died at some undisclosed time before the trial; testimony showing that P. Griffin, Floyd Rector, and Mrs. Will Searcy did not vote in Township 1 Ward 4 on 7 November, 1950; testimony suggesting that Hugo Wild, a witness for Davis who stood by the polling place in Township No. 1 Ward 4 most of the day, did not see C. Ammons, L. Ammons, H. L. Bridges, Dillard Gentry, Mrs. Dillard Gentry, Jim Gentry, Elisha Griffin, Mrs. P. Griffin, T. Griffin, W. Griffin, Will Hensley, H. Hoyle, Ola Hunter, Mrs. Zade Merrill, F. Reese or C. Rice vote in Township No. 1 Ward 4 on 7 November, 1950; testimony tending to show that Troy Ramsey, a private person who did not testify in the cause, had two official ballots marked Democratic in his possession on 7 November, 1950, and made an unsuccessful effort to bribe Lee F. Briggs, a qualified voter in Township No. 1 Ward 4 and a witness for Davis, to place such marked ballots in the box in a surreptitious manner when he cast his own ballot; testimony pointing out that on the day before the election B. J. Ledford, the registrar of Township No. 6, where a total of 282 votes were allegedly given to both candidates for the sheriffalty, delivered to F. Ray Frisby a copy of the registration book for that precinct, showing that 373 persons were qualified to vote in Township No. 6; testimony indicating that one of the judges of election in Township No. 6 was not acquainted with J. R. Boyd, J. R. Brown, M. J. Clark, H. M. Roberts, Mrs. H. M. Roberts, H. C. Vaughn, B. M. West, and John West, whose names appeared on the registration book of that precinct; testimony showing that J. B.

Austin, A. J. Brown, Mrs. A. J. Brown, Ray Brown, H. E. Carter, P. V. Carter, Lawrence Hagan, Minton Robinson, and Mrs. Minerva Sprouse, whose names appeared on the registration book of Township No. 6, were dead at the time of the trial; testimony merely disclosing that Banie Lusk, the registrar of Township No. 8 Ward 2, went to Marshall, the county seat, "to see what . . . returns had been reported from No. 8" after he had assisted in counting and recording the votes cast in his precinct; and testimony of Claude Davis, an agent of the State Bureau of Investigation and a witness for the defendant Davis, describing the appearance of the entry on the return for Township No. 15 reciting the votes allegedly cast for the candidates for the house of representatives.

All of this testimony was properly excluded. None of it had any relevancy to the only controverted issue in the case, *i.e.,* whether the returns from the five specified precincts were altered in the manner alleged between the time they were signed by the precinct officials and the time they were canvassed by the county board of elections. We indulge this observation at this juncture: The evidence indicating that certain persons whose names appeared on the registration books of two of the precincts were dead at the time of the trial does not reasonably tend to establish anything except the tragic truth that registered electors are subject to the unhappy mortality which is the inescapable lot of all mankind.

The evidence proffered by Davis tending to show that more than twenty-five persons voted for him in Township No. 6 was rightly rejected under his own pleading. His answer alleged with absolute positiveness that only twenty-five ballots were cast for him in that precinct.

Davis noted exceptions to the exclusion of the testimony of the witnesses George Bridges, E. V. Ledford, and Abner Wild as to the contents of certain documents which had been received in evidence. This testimony was clearly incompetent under the specific rule of law which declares that a writing is the best evidence of its own contents. *S. v. Ray,* 209 N.C. 772, 184 S.E. 836; *Harris v. Singletary,* 193 N.C. 583, 137 S.E. 724.

The trial judge correctly held that the hearsay rule precluded Davis from introducing the statements made by his counsel to the witness Judson Edwards "that more people voted than there were names listed on poll books in some precincts" and "that returns in some precincts were changed"; the statements made by unidentified persons to the witness Claude Davis, an agent of the State Bureau of Investigation, concerning various events allegedly happening in Madison County at the election of 7 November, 1950; the statement allegedly made by Troy Ramsey to the witness Andy Gosnell that the latter was to use $7.50 handed to him by the former to pay Lenora Gosnell, a registered voter in Township No. 1

Ward 4, for voting; and the statement made by Winston Rice, a private person who assisted the precinct officials of Township No. 1 Ward 4 in counting ballots, to the witnesses W. B. Robinson and Clyde Wallin that Davis led Ponder by 30 votes in Township No. 1 Ward 4 after all ballots cast in that precinct had been counted. *Merrell v. Whitmire,* 110 N.C. 367, 15 S.E. 3. It is noted, in passing, that Davis offered the last mentioned statement in evidence before Winston Rice became a witness in the case, and that he did not tender the same a second time to impeach Winston Rice after the latter took the stand for Ponder and deposed that the final count in Township No. 1 Ward 4 "was Davis 128 and Ponder 117." 4 C.J.S., Appeal and Error, Section 291b (3).

Davis excepted to the ruling of the trial judge sustaining the objection of the relators and Ponder to this question propounded to Judson Edwards, a witness for relators, by counsel for Davis: "Did you check the poll books in any of the precincts to determine if more votes were counted than were on the poll book in that precinct?" This ruling occasioned Davis no harm, for the witness Edwards would have replied "I did not" if he had been permitted to answer. A like observation applies to the exception to the action of the trial judge upholding the objection of Ponder to this question asked his witness George Bridges by counsel for Davis: "I ask you if you don't know that he (*i.e.,* Will Hensley) has been moved for seven years from your precinct?" The witness Bridges had already testified that he did not know Will Hensley.

We have now reviewed all exceptions to the exclusion of evidence save Exception No. 65, which was taken under the circumstances delineated below.

The trial of the action engrossed the attention of the Superior Court for virtually two weeks. Upwards of a hundred persons were subpoenaed from their employments to testify as witnesses. They gave voluminous evidence. F. E. Runnion, a private citizen and a witness for Davis, testified without objection that he assisted the precinct officials in Township No. 1 Ward 4 in counting the ballots after the polls were closed; that he used a tally sheet in such undertaking; that the final count in the race for Sheriff in Township No. 1 Ward 4 was "Ponder 107 and Davis 132"; and that such final count appeared on the face of his tally sheet, which was received in evidence without objection. The witness Runnion undertook to testify to the additional fact that at the termination of the counting he told the persons present at the polling place that "Davis had 25 majority." The trial judge rejected this additional fact on objection by Ponder.

The testimony of Runnion as to the extrajudicial statement made by him at the polling place was not admissible as substantive evidence. But

it was competent to corroborate him as a witness, for he gave similar evidence on the trial. *S. v. Spencer,* 176 N.C. 709, 97 S.E. 155.

Davis offered the excluded testimony of the witness Runnion generally; Ponder made a general objection to its admission; and the trial judge sustained such general objection. Davis merely noted his Exception No. 65 to this ruling. He did not ask the judge to admit the testimony for the limited purpose for which it was competent, *i.e.,* to corroborate Runnion as a witness. There is sound authority and reason to support the view that the trial judge cannot be charged with legal error in excluding the evidence under these circumstances. Stansbury on North Carolina Evidence, section 27 (f); 4 C.J.S., Appeal and Error, section 281.

It is unnecessary, however, for us to make any adjudication on this precise point. For the purpose of this particular appeal, it will be taken for granted that the trial judge made a legal misstep when he excluded the testimony of Runnion as to his statement at the polling place that "Davis had 25 majority" in Township No. 1 Ward 4. Even so, the rejection of this statement must be held harmless on the present record. It is not conceivable that this comparatively inconsequential bit of corroborative evidence would have affected the verdict of the jury in any degree had it been admitted in evidence on the protracted trial of the action in the Superior Court. *Call v. Stroud,* 232 N.C. 478, 61 S.E. 2d 342; *S. v. Mundy,* 182 N.C. 907, 110 S.E. 93. For this reason, we are unwilling to hold that the exclusion of this small piece of corroborative evidence compels us to inflict upon the parties, the taxpayers, and the witnesses the monstrous penalty of a new trial.

We have studied the twenty-two exceptions to the charge with great care. None of them are tenable. When the charge is read as a whole, it reveals that the judge stated the evidence correctly, summed up the contentions fairly, and explained the law accurately. The rulings as to issues were sound. The issues actually submitted were joined on the pleadings and were sufficient to present all controverted matters to the jury. *Lloyd v. Venable,* 168 N.C. 531, 84 S.E. 855. The remaining exceptions are formal and merit no discussion.

An ancient axiom asserts that no wretch e'er felt the halter draw with good opinion of the law. It cannot be gainsaid, however, that the appellant has no just cause to complain. He has had a fair trial in point of law in the Superior Court before an able and learned jurist who safeguarded all his legal rights with the cold neutrality of the impartial judge. The controverted issue of fact was decided against him on sufficient evidence by a disinterested jury, the body created by law to determine truth from conflicting testimony. He has, indeed, had his day in court.

The judgment of the Superior Court will be upheld, for the record shows that there is in law

No error.

VALENTINE, J., took no part in the consideration or decision of this case.