## SHUFORD v. McINTOSH

[104 N.C. App. 201 (1991)]

RICHARD DANIEL SHUFORD, II, by his Guardian Ad Litem, RICHARD DANIEL SHUFORD, and RICHARD DANIEL SHUFORD, Individually, Plaintiffs v. ARCHIE N. McINTOSH, M.D., ARCHIE N. McINTOSH, M.D., P.A., and THE McDOWELL HOSPITAL, INC., a North Carolina Corporation, Defendants

No. 9024SC1185

(Filed 1 October 1991)

1. **Jury § 7.13 (NCI3d) — civil action — excessive peremptory challenges — plaintiff not prejudiced**

   The trial court erred in allowing each defendant in a medical malpractice action two more peremptory challenges than N.C.G.S. § 9-22 authorizes upon finding that defendants had antagonistic defenses, but plaintiff was not prejudiced by such error.

   **Am Jur 2d, Jury §§ 250, 251, 260-262.**

2. **Physicians, Surgeons, and Allied Professions § 15 (NCI3d) — medical malpractice case — exclusion of medical pamphlets**

   The trial court in a medical malpractice case did not err in the exclusion of two medical pamphlets where no foundation was laid for establishing the relevancy or reliability of these pamphlets, and the pamphlets appear to be recommendations rather than standards applicable to defendants.

   **Am Jur 2d, Evidence § 890.**

3. **Damages § 53 (NCI4th) — collateral source rule — cross-examination about public benefits**

   Defendants' cross-examination of plaintiff's witnesses in a medical malpractice action as to educational and other public benefits and services available to the brain-damaged minor plaintiff did not violate the collateral source rule and was not error where it was in response to testimony offered by plaintiff that such facilities and services were not available in the area.

   **Am Jur 2d, Damages §§ 570, 571, 583, 584.**

   **Receipt of public relief and gratuity as affecting recovery in personal injury action. 77 ALR3d 366.**

APPEAL by plaintiffs from judgment entered 26 January 1990 by *Judge Joseph R. John* in YANCEY County Superior Court. Heard in the Court of Appeals 3 June 1991.

The action of the minor plaintiff, Richard Daniel Shuford, II, is for brain damage and other injuries allegedly caused by the negligence of the defendants during his mother's pregnancy and delivery. His father's action to recover for the child's medical expenses and lost services was voluntarily dismissed before trial. Following a December-January trial of the child's case, interrupted by a thirteen day recess, the jury answered the negligence issue as to each defendant "No" and judgment was entered dismissing the action. In support of his allegations of neglect plaintiff presented evidence tending to show that the medical care defendants furnished him and his mother was deficient in several respects and caused his considerable mental and physical deficiencies. In pertinent part plaintiff's evidence when viewed in its most favorable light to him tends to show the following:

Because of swelling in her ankles during the last few weeks preceding delivery, Dr. McIntosh, his mother's obstetrician, had her take the diuretics Diuril and Lasix in dosages that were known to endanger the health of prenatal children. On the morning of 28 July 1977, though the child's head was not then engaged in the pelvis and was not in position to start through the birth canal, Dr. McIntosh, in an attempt to induce labor, ruptured the mother's amniotic membranes in his office and had her admitted to defendant McDowell County Hospital, which was not qualified to properly handle high risk obstetrical patients such as plaintiff's mother. At 8 o'clock that night, labor not having progressed, Dr. McIntosh administered dosages of the drug Pitocin, which caused the uterus to contract as though in labor for several hours; during that period the fetal heart tones were not monitored and the doctor was not in attendance, as approved medical practice required, though defendants knew that the repeated contractions of the uterus could reduce or cut off the supply of blood and oxygen to the child. After several hours of contractions when his mother did not go into actual labor, Dr. McIntosh administered still another dose of Pitocin with the same effects and result as before. About twenty-four hours after first attempting to induce labor by rupturing the mother's membranes and fifteen hours after first administering the drug Pitocin to her, Dr. McIntosh ascertained by X-ray pelvimetry, as he could and should have ascertained before under-

SHUFORD v. McINTOSH

[104 N.C. App. 201 (1991)]

taking to induce labor, that the child's head was not engaged, the mother's pelvis was too narrow to allow the child to pass through the birth canal, and that instead of expediting labor the prolonged uterine contractions that had occurred had repeatedly pushed the child's head against the mother's bony pelvis to no purpose. After the child was properly delivered by Caesarean section it exhibited signs of serious injury during birth including respiratory distress and insufficient oxygen supply, and two days later the child began to have severe seizures, but the hospital nurses did not notify the doctor of any of those ominous conditions and neither defendant took any steps to determine the extent or cause of the conditions or to transfer the child to a hospital more qualified to treat them.

*Pulley, Watson & King, P.A., by W. Paul Pulley and Michael J. O'Foghludha; and Dennis J. Winner, P.A., by Dennis J. Winner, for plaintiff appellant.*

*Mitchell Blackwell & Mitchell, by W. Harold Mitchell and Keith W. Rigsbee, for defendant appellee McIntosh.*

*Dameron and Burgin, by Charles E. Burgin, for defendant appellee The McDowell Hospital, Inc.*

PHILLIPS, Judge.

[1]  In seeking a new trial, plaintiff cites five actions by the court as prejudicially erroneous. The first action complained of, allowing each defendant more peremptory jury challenges than the statutes authorize, was clearly erroneous, but such action has heretofore been held to be harmless error by our Supreme Court.

G.S. 9-19 allows each side in a civil action eight peremptory challenges, and the only authority for exceeding that allowance is the following provision in G.S. 9-20:

·    When there are two or more defendants in a civil action, the presiding judge, if it appears that there are antagonistic interests between the defendants, may in his discretion apportion among the defendants the challenges now allowed by law, or he may increase the number of challenges to *not exceeding six for each defendant* or class of defendants representing the same interest. In either event, the same number of challenges shall be allowed each defendant or class of defendants representing the same interest. The decision of the judge as to

the nature of the interests and number of challenges shall be final. (Emphasis added).

In this case the trial judge, after finding that the defendants had antagonistic interests, allowed each defendant eight peremptory challenges. Dr. McIntosh exercised all eight of the challenges allowed him, the hospital used only five, and plaintiff only seven.

Though defendants argue otherwise, the court had no authority to allow each defendant eight peremptory challenges. The language of G.S. 9-20 is susceptible of no other interpretation. Having found that the interests of the defendants were antagonistic, G.S. 9-20 authorized the trial judge in his discretion to either apportion between them the eight peremptory challenges allotted to the defendants or to increase the peremptory challenges of each defendant up to a maximum of six; it did not authorize the judge to allot either defendant more than six peremptory challenges.

In contending that allowing the defendants more peremptories than the statute allows was prejudicial as a matter of law, plaintiff mainly relies upon the statement in *State ex rel. Freeman v. Ponder*, 234 N.C. 294, 302, 67 S.E.2d 292, 298 (1951), that "a litigant cannot exercise any more peremptory challenges than the number allowed to him by law," but that case did not involve the allowance of more peremptory challenges than then G.S. 9-22 authorized; and the holding in *State v. Bindyke*, 288 N.C. 608, 220 S.E.2d 521 (1975), that an alternate juror being in the jury room after deliberations began in violation of G.S. 9-18 was reversible error *per se*. These decisions cannot be applied to this case which involves allowing more peremptory challenges than the applicable statute authorized, because our Supreme Court has held that such allowances are not reversible error *per se*. In *State v. Smith*, 290 N.C. 148, 226 S.E.2d 10, *cert. denied*, 429 U.S. 932, 50 L.Ed.2d 301 (1976), the Court held that allowing the State one more peremptory challenge in a capital case than G.S. 9-21 authorized was not prejudicial error. In *State v. Woods*, 286 N.C. 612, 213 S.E.2d 214 (1975), *modified*, 428 U.S. 903, 49 L.Ed.2d 1208 (1976), the Court ruled to the same effect though two capital crimes were charged and the trial court mistakenly allowed both sides many more peremptories than the statute authorized.

Plaintiff's arguments to the contrary are not without appeal. There is good ground for maintaining, as he argues, that allowing one side in a case more peremptory challenges than the statute

SHUFORD v. McINTOSH

[104 N.C. App. 201 (1991)]

authorizes taints the fair jury trial process that our system of jurisprudence is based upon, and that a violation of the statute was intended by the Legislature to be prejudicial since showing prejudice in such situations is all but impossible and the statute will become a dead letter if not enforced. But the decisions cited require us to hold otherwise.

[2] The other actions of the trial court that plaintiff complains of were either not erroneous or were without prejudicial effect. The refusal to receive into evidence two medical pamphlets — "Standards for Ambulatory Obstetric Care" published by the American College of Obstetricians and Gynecologists, and "Rules and Statutes Applying to the Licensing of Hospitals in North Carolina" published by the North Carolina Department of Human Resources — was not error because no foundation was laid for establishing either the relevancy or reliability of these pamphlets, which on their face appear to be recommendations, rather than standards applicable to either of the defendants. And as plaintiff concedes in his brief, he "was later able to introduce such evidence via other witnesses."

[3] Permitting defendants to cross-examine plaintiff's witnesses as to educational and other public benefits and services available to the child did not violate the collateral source rule and was not error because the cross-examination was in response to testimony offered by plaintiff that such facilities and services were not available in that area. The other cross-examination allowed of plaintiff's medical witness, which plaintiff complains of, was also within reasonable limits and the court's discretion. And the denial of plaintiff's motion for a new trial pursuant to Rule 59, N.C. Rules of Civil Procedure was within the court's discretionary authority and no abuse is indicated.

No error.

Judges ARNOLD and WELLS concur.